# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERRY LEE LOLLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-248-RAW-KEW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jerry Lee Lollis (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 2, 1969 and was 41 years old at the time of the ALJ's decision. Claimant completed his education through the seventh grade. Claimant has no past relevant work. Claimant alleges an inability to work beginning June 1, 2006 due to limitations resulting from arthritis, bad knees, poor circulation,

bipolar disorder, anxiety, and depression.

**Procedural History**

On August 3, 2006, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application were denied initially and upon reconsideration. On November 26, 2008, the ALJ issued an unfavorable decision which the Appeals Council remanded for further proceedings. A second administrative hearing was conducted before ALJ Lantz McClain by video on January 4, 2010. On August 25, 2010, the ALJ issued an unfavorable decision on Claimant's application. On November 12, 2010, the Appeals Council denied review of the ALJ's decision. Claimant appealed the decision to this Court.

On March 26, 2012, this Court reversed the ALJ's decision and remanded the case for further proceedings. On November 8, 2012, ALJ Doug Gabbard, II conducted a third video hearing. On February 13, 2013, the ALJ issued an unfavorable decision. The Appeals Council did not review the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential

evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to identify all of Claimant's severe impairments; (2) failing to find Claimant's impairments meet the listings; (3) reaching an improper RFC; and (4) finding Claimant can perform the jobs identified by the ALJ at step five.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of minimal left knee joint space narrowing, morbid obesity, depression, anxiety, and personality disorder. (Tr. 377). The ALJ also found Claimant retained the RFC to perform a full range of sedentary work except employment was limited to unskilled work (work that needs little or no judgment to do simple duties that can be learned on-the-job in a short period of time) where supervision was simple, direct, and concrete; interpersonal contact with supervisors and co-workers was incidental to the work performed, e.g., assembly work, and where there was no contact with the general public. Claimant was also limited by the ALJ to

5

climbing, balancing, stooping, kneeling, crouching, and/or crawling more than occasionally. (Tr. 380). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of hand suture winder and touch up screener both of which the expert found existed in sufficient numbers in the regional and national economies. (Tr. 393).

Claimant contends the ALJ should have found his back and neck pain and problems with his hands as severe impairments. Claimant relies upon the findings of Dr. Wojciech L. Dulowski to support his assertion of these further impairments. Dr. Dulowski determined Claimant had good coordination with equal strength in the upper and lower extremities. He walked a "little bit slowly, but had good safety stability." Claimant had difficulty walking on tiptoes and heels because of back pain. Claimant's grip strength was 4/5 and he had good gross and fine manipulation. Claimant complained of some numbness in the right thumb and second finger. (Tr. 651). Alignment of Claimant's cervical, thoracic, and lumbar spine was normal. Claimant was very tender in the midline on the cervical and lumbar spine. All passive movements of the upper and lower extremities were normal. Some crepitation was noted during movement of both knees. (Tr. 652).

Dr. Dulowski also found, however, that Claimant had no

6

reduction in range of motion in any joint. (Tr. 653). He determined Claimant had no restrictions in his hand or wrist movement. He expressly stated Claimant could effectively oppose the thumb to the fingertips, could manipulate small objects, and could effectively grasp tools such as a hammer. (Tr. 655).

Since the ALJ determined Claimant suffered from other severe impairments, the sole question presented by Claimant's arguments is whether the inclusion of Claimant's neck, back, and hand problems limited his ability to engage in basic work activities. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step

7

two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

Even through a liberal reading of Dr. Dulowski's findings, this Court cannot conclude that these additional conditions constituted severe impairments. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See e.g.* Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The medical record, including Dr. Dulowski's report, does not support a finding of severe impairment for the additional conditions designated by Claimant.

## Listings

Claimant contends that his severe impairments meet Listings 12.04 pertaining to affective disorders and 12.08 related to personality disorders. Claimant bases this assertion solely upon the unsigned Psychiatric Review Technique form completed by an unidentified examiner. On that form, the examiner found Claimant

was markedly limited in the functional areas of restriction of activities of daily living and difficulties in maintaining social functioning under the Paragraph "B" criteria. (Tr. 667).

The ALJ is required to follow the procedure for determining mental impairments provided by regulation. 20 C.F.R. §§ 404.1520a, 416.920a; *See*, Listing of Impairments. The procedure must be followed for the evaluation to be considered valid. <u>Andrade v. Sec. of Health & Human Services</u>, 985 F.2d 1045, 1048 (10th Cir. 1993). The ALJ must first determine whether there are medical findings of mental impairment especially relevant to the ability to work found in Part A of the Listing of Impairments. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Additionally, Claimant must show he satisfies two of the following required restrictions: (1) marked restriction in activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C, 12.04. The ALJ must then either evaluate the degree of functional loss resulting from the impairment, using the Part B criteria, or examine the special criteria set forth in the listings for evaluating the severity of particular impairments.

This Court does not perceive that the ALJ addressed the paragraph A findings necessary for the evaluation of Claimant's

mental impairment. While Defendant attempts to transfer this burden to Claimant, the case authority indicates the ALJ is required to set these findings out in his decision. Carlson v. Colvin, 2013 WL 978989, 7-8 (D. Utah). Moreover, the state agency medical consultant who authored an unsigned PRT found Claimant was markedly limited in two areas under paragraph B which would appear to indicate Claimant meets Listing 12.04. This report was affirmed by Dr. George Grubbs. (Tr. 675). The ALJ rejected the report only because it was unsigned. (Tr. 378). On remand, the ALJ shall set forth the appropriate analysis under paragraph A and shall consider the report which found Claimant was markedly limited under two areas of functional limitation as would qualify Claimant for Listing 12.04.

**RFC Determination**

Claimant asserts the ALJ failed to properly consider Dr. Robert Spray's four consultative assessments of Claimant's mental condition. Curiously, the ALJ concluded that "Dr. Spray completed the MSS form in such a fashion as to opine that claimant was disabled, and, when viewed from that perspective, Dr. Spray's disability statement invades the province of the fact finder herein (the undersigned ALJ)." (Tr. 385). After being particularly critical of Dr. Spray's findings, the ALJ summarized his rejection of the examiner's opinions as follows:

> There is no direct evidence by which to conclude that

> solely because of his particular "relationship" with
> claimant, Dr. Spray offered such a limited MSS functional
> assessment. Nor can claimant's attorney or Dr. Spray be
> faulted if a client/examinee is not truthful. However,
> the above-cited regulation serves as a reminder that
> purchased expert evidence (obtained in a disputed manner)
> is not the equivalent of longitudinal evidence arising
> out of a course treatment. The undersigned, in view of
> the evidence as a whole, simply does not find Dr. Spray's
> opinion evidence convincing. My conviction is the sum of
> complex nuances [much like might confront a juror (an ALJ
> is not only a judicial officer, but also the finder of
> fact) in any given case] and empirical observances.

(Tr. 387).

This statement smacks of the prohibited substitution of the ALJ's lay opinion for that of the medical professional. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004). This Court previously set forth Dr. Spray's various examination findings. On January 29, 2007, Dr. Spray conducted a consultative psychological examination of Claimant. Claimant was on medication prescribed by Dr. Kenneth Foster for irritability, stress, anxiousness, and an inability to pay attention. (Tr. 278). Claimant reported he had difficulty learning in school and was in special education classes. He told Dr. Spray that he was seeing little people which he described as "more or less shadows" that are watching Claimant. He noted that he was seeing the little people more often but that they did not talk with him. (Tr. 279). Dr. Spray diagnosed Claimant with Anxiety Disorder, NOS, Depression, NOS, and Personality Disorder, NOS. (Tr. 281). He found no marked limitations with

concentration, persistence, or pace during the examination. (Tr. 282).

On September 8, 9, and 16, 2008, Dr. Spray again conducted a psychological evaluation of Claimant and issued a report. Claimant still reported irritability with others. Dr. Spray noted that Dr. Foster had closed his practice, resulting in Claimant stopping mental health treatment. Claimant stated he believed that the psychotropic medication he had been taking made him not get as angry as fast. Dr. Spray found Claimant to locomote with great difficulty and was in and out of his seat during the interview. He had labored breathing and complained of numbness in his legs. He sighed, sweated, and cried at times. (Tr. 349).

After administering testing, Dr. Spray concluded Claimant had significant emotional illness, including both anxiety and depression. (Tr. 351). He continued in his diagnosis of Personality Disorder, noting a history of antisocial behavior, retreating to the mountains, and interpersonal irritability. He appeared depressed and anxious with episodic panic attacks. Dr. Spray recommended a neuropsychological consult. His final diagnosis was Anxiety Disorder, NOS, Depression, NOS, Personality Disorder, NOS, with antisocial, dependent, and histrionic features. (Tr. 352).

In completing a Residual Functional Capacity Secondary to Mental Impairments form, Dr. Spray concluded Claimant was markedly

13

limited in the areas of relating to co-workers, interacting with supervisors, dealing with work stresses, maintaining attention for extended periods of time, maintaining concentration for extended periods of time, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, performing at a consistent pace, performing without an unreasonable number or length of rest periods, demonstrating reliability, responding and adjusting to the use of new and unfamiliar tools and/or machines, behaving in an emotionally stable manner, accepting instructions and responding appropriately to criticism from supervisors, and getting along with co-workers or peer without distracting them or exhibiting behavioral extremes. (Tr. 353-55). Claimant was found to be moderately limited in numerous other areas. Id.

On April 21, 2010, Dr. Spray conducted a third evaluation after the Appeals Council remanded the case to the ALJ for further consideration of Dr. Spray's opinions. Dr. Spray arrived at the same diagnosis as in the other two evaluations. (Tr. 359). He found Claimant was slightly slow in pace, concentration was adequate, but he was impatient and had some underlying irritability. (Tr. 360).

Dr. Spray also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form on Claimant dated April

14

29, 2010. Dr. Spray found Claimant was markedly limited in the areas of carrying out simple instructions, the ability to make judgments on simple work-related decisions, understanding and remembering complex instructions, carrying out complex instructions, and interacting appropriately with supervisors. (Tr. 362-64).

On August 2, 2010, an additional Medical Source Statement of Ability to Do Work-Related Activities (Mental) form was completed by Dr. Brian R. Snider. Dr. Snider found Claimant to be markedly limited in the areas of understanding and remembering complex instructions, carrying out complex instructions, the ability to make judgments on complex work-related decisions, interacting appropriately with the public, supervisors, co-workers and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 365-66). Dr. Snider noted Claimant's memory and concentration were likely impaired due to depression and anxiety. (Tr. 365). He also found Claimant had excessive irritability, defensiveness, and poor social skills. (Tr. 366).

On July 21, 2010, Dr. Snider also examined Claimant. He diagnosed him with Major Depressive Episode, Single Episode - Mild, Generalized Anxiety Disorder, Rule-Out Borderline Intellectual Functioning, Rule-Out Personality Disorder. He estimated Claimant's GAF at 55. (Tr. 370-71).

Clearly, neither Dr. Spray nor Dr. Snider were treating

15

physicians. Nevertheless, consultative physicians' opinions are entitled to be considered and weighed. 20 C.F.R. § 416.927. The factors to be considered are (1) the examining relationship and frequency of examination; (2) the degree to which the physician's opinion is supported by relevant evidence; (3) consistency between the opinion and the record as a whole; (4) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (5) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id.

Now, the ALJ rejects Dr. Spray's findings because of the "complex nuances" of his decision making as the finder of fact such that he simply does not believe Dr. Spray's conclusions. On remand, the ALJ shall give Dr. Spray's opinions their due under the regulations. While this Court can appreciate his suspicions regarding Claimant's exaggeration during testing, the ALJ must also be mindful that Dr. Spray is the medical professional who is well-equipped to ascertain the relative reliability of the testing and Claimant's participation in it.

**Step Five Analysis**

Since the ALJ is required to re-evaluate his RFC findings, he should also reconsider and reformulate his hypothetical questioning of the vocational expert such that the questions accurately reflect the totality of Claimant's impairments and limitations.

16

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of September, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE